PHILADELPHIA & R. R. Co. *v.* POLLOCK.[1]

*(Circuit Court, E. D. Pennsylvania.* February 11, 1884.)

INTERNAL REVENUE—SECTION 19, ACT OF FEBRUARY 8, 1875, (18 ST. 311,)—NOTES USED FOR CIRCULATION.—PROMISSORY NOTES—WAGES CERTIFICATES.

The nineteenth section of the act of Feburary 8, 1875, (18 St. 311,) providing that " every association, other than national bank associations, and every corporation, * * * shall pay a tax of ten per centum on the amount of their own notes *used for circulation* and paid out by them," does not apply to certifi-

---

[1] Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

cates of indebtedness, bearing interest and payable to bearer on a certain day therein named, issued in denominations of five and ten dollars each, and paid out by a railroad company to its employes for wages, and providing that they would be received by the company at or before maturity for any debts due the company. These notes or certificates, having been issued only to the employes of the company on account of wages, and when paid by the company having been canceled and not reissued, were not "used for circulation," and that they were used afterwards by those to whom they were issued to discharge their debts to others or to purchase subsistence for themselves, does not affect the character imposed upon them by the company.

Hearing on Bill, Answer, and Proofs.

This was a bill to enjoin Pollock, collector of internal revenue, and his deputy from proceeding to enforce payment of a tax levied under the nineteenth section of the act of congress of February 8, 1875, (18 St. 311,) providing "that every person, firm, association, other than national bank associations, and every corporation, state bank, or state banking association, shall pay a *tax* of *ten per centum* on the amount of their own notes *used for circulation* and paid out by them." From the pleading and evidence it appeared that the Philadelphia & Reading Railroad Company issued to its employes for wages in the years 1878 and 1879 certain instruments, in the following form:

"THE PHILADELPHIA & READING RAILROAD COMPANY.

"No. ——.                                          *Wages Certificate.*

"PHILADELPHIA, December —, 1878.

"The Philadelphia & Reading Railroad Company promises to pay to the bearer hereof the sum of —— dollars, on the —— day of ——, 1879, with interest from date, without defalcation, for value received. This note is issued for wages due by the Philadelphia & Reading Railroad Company, and will be received either before or at its maturity for the amounts due thereon in payment of freight and toll bills of the Philadelphia & Reading Railroad Company, for coal bills of the Philadelphia & Reading Coal & Iron Company, or any other debts due to either of the said companies.

"F. B. GOWEN, President.

"S BRADFORD, Treasurer."

These certificates were printed on tinted paper, embellished with a vignette, and were somewhat narrower and longer in size than national bank notes. For convenience they were made in denominations of five and ten dollars each, and were issued to an amount of about $4,800,000. They were paid only to the employes of the company for wages, and when returned to the company, before maturity, in payment of freights or tolls, and when paid by the company at maturity, were canceled and not reissued. There was evidence that in many cases these notes had been used, by the persons to whom they had been issued, in payment for goods purchased from store-keepers and dealers, and that wholesale dealers had received them in payment of accounts due by such store-keepers, and that they had been largely dealt in by stock brokers. There was also evidence that they had never been treated as circulation in the localities in which

they were thus used, and that they could not be mistaken for bank notes.

*James E. Gowen,* for complainants.

The certificates are simply interest-bearing promissory notes, payable at a certain time, issued for existing debts, and were never intended or used as "circulation." The extent of the issue is of no importance. The denominations used were to facilitate the payment of thousands of officers and employes, whose salaries were largely in arrear. They were issued only to employes for actual debts, and when returned to the company before or after maturity were canceled and not reissued. Had the purpose been to use them as circulation they would have been reissued, and in such case a tax could have been claimed only on the average monthly amount in circulation. They were dealt in by brokers and others as any other security, and their credit was fixed by their quotable value at the stock exchange. They resemble warrants issued by municipalities. The distinction between notes issued in payment of existing debts and notes issued for circulation has always been recognized. *Craig* v. *Missouri,* 4 Pet. 410; *Atty. Gen.* v. *Ins. Co.* 9 Paige, Ch. 470; *Dively* v. *City of Cedar Falls,* 27 Iowa, 227; *Mullarky* v. *Town of Cedar Falls,* 19 Iowa, 24. Obligations which circulate as money are payable on demand. 14 Abb. Pr. 275; Morse, Banks, 458. The question, however, is concluded by *U. S.* v. *Wilson,* 106 U. S. 620, [S. C. 2 Sup. Ct. Rep. 85,] which was a much stronger case for the government than the present. The committee on ways and means of the house of representatives, and the committee on finance of the senate, at Washington, have both reported that these certificates are not taxable as circulation under the act of 1875.

*I. K. Valentine,* U. S. Dist. Atty., for respondents.

These notes are within the prohibition of the act. *Thomas* v. *Richmond,* 12 Wall. 353. The name given these notes by the company is not essential. Their nature is to be determined by the instruments themselves, their character and purpose. The agreement to receive them for debts due the company is calculated to facilitate their circulation. In fact they did circulate. It is no answer to say they were not reissued; Bank of England notes are not reissued. These are in all respects current notes used for circulation, and taxable as such. Webst. Dict. "Note;" Morse, Banks, 438; *Craig* v. *Missouri,* 4 Pet. 410; *Briscoe* v. *Bank of Kentucky,* 11 Pet. 257. The law is so settled in Pennsylvania. *Hazleton Coal Co.* v. *Megargel,* 4 Barr, 324. Also in New York. *Ins. Co.* v. *Cadwell,* 3 Wend. 302; *Leavitt* v. *Yates,* 4 Edw. Ch. 134. *U. S.* v. *Wilson, supra,* arose under a different act, and in that case the notes had been issued by the receiver under a decree of a court and were sold by the company.

McKennan, J. We are of opinion that this case is ruled by *U. S.* v. *Wilson,* 106 U. S. 620, [2 Sup. Ct. Rep. 85.] In that case it was sought to subject to taxation certificates of indebtedness issued

by a railroad company, and by a receiver appointed to take charge of it, as notes or obligations, within the meaning of section 3408 of the Revised Statutes, "calculated, or intended to circulate, or to be used as money," and the court held that they were not "circulation" and so not taxable. The tax claimed in this case was imposed under the nineteenth section of the act of congress of February 8, 1875, which provides "that every person, firm, association other than national bank associations, and every corporation, state bank, or state banking association shall pay a tax of ten per centum on the amount of their own notes used for circulation and paid out by them." The notes issued by the complainants here were in the form of promises to pay to bearer a round sum at a future day, with interest, and were upon their face stated to be for wages due by the Philadelphia & Reading Railroad Company, and were receivable before or at maturity in payment, of freight and toll bills of the Philadelphia & Reading Railroad Company and for coal bills of the Philadelphia & Reading Coal & Iron Company, or any other debts due to either of said companies. These notes were only issued to the employes of the railroad company on account of wages due them, and when paid by the company were canceled and not reissued. They were not, therefore, "used for circulation" by the company, but only as evidences of the company's indebtedness to its employes for wages. That they were used afterwards by those to whom they were issued to discharge their debts to others, or to purchase subsistence for themselves, is, in our judgment, indecisive in determining the character of these instruments, because that is to be imposed upon them by the company by *using them as circulation*, and paying them out as such. This, as already stated, was not done. What is there, then, to put them in the category of "circulation?" This is claimed to result from the form in which they were issued. But this is fully answered by the supreme court in *U. S. v. Wilson*. In every essential particular the certificates issued there and those in question here are remarkably alike. The former were certificates of indebtedness, good for round sums, payable to bearer at a future day, with interest, and one-fourth of their face value was receivable before maturity for freight and debts due the company, and were paid out again at their face value, with interest. Under these circumstances the supreme court held that it was not satisfied that these certificates "were calculated or intended to circulate or be used as money." Now, in view of this decision, we cannot hold that certificates of similar form, used by the railroad company, not for circulation, but as evidence of wages due to its employes, are within the scope and meaning of the act of congress, and so subject to the tax imposed by it.

The first prayer of the bill must therefore be granted.

BUTLER, J., concurred.